UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CENTRAL BANK OF INDIA and EXPORT-IMPORT BANK OF INDIA,

                        Plaintiffs,

– against –

U.S. BANK NATIONAL ASSOCIATION,

                        Defendant.

**OPINION & ORDER**

18 Civ. 534 (ER)

Ramos, D.J.:

      Plaintiffs Central Bank of India ("CBI") and Export-Import Bank of India ("EIBI") (jointly, "Plaintiffs") bring this breach of contract action against Defendant U.S. Bank National Association ("U.S. Bank"), alleging that U.S. Bank violated the terms of their contract by objecting in a bankruptcy proceeding to Plaintiffs' claim to rights in certain collateral. Before the Court is Plaintiffs' motion for partial summary judgment declaring that U.S. Bank breached the contract. For the reasons set forth below, the motion is DENIED.

I.    **BACKGROUND**

      This case arises from the bankruptcy and closing of Essar Steel Minnesota LLC ("ESML"), a company formed to develop and operate an iron ore pellet mine and production facility in northern Minnesota. Def.'s Response to Pls.' Statement of Facts ¶ 1.[1] To secure equipment and services for the mine's construction, ESML entered into a Supply and Engineering Contract with its affiliate, Essar Projects (India), Limited ("EPIL"). Def.'s Response ¶ 2.

      In order to fulfill its contract with ESML, beginning in 2010, EPIL signed a series of

---

[1] This opinion will refer to U.S. Bank's responses to Plaintiffs' 56.1 statement of facts hereon as "Def.'s Response."

facility agreements with Plaintiffs wherein Plaintiffs agreed to lend EPIL up to 900 crore Indian Rupees.[2] Def.'s Response ¶ 3. Plaintiffs' loans were secured by ESML's collateral, not EPIL's. Def.'s Response ¶ 4. Plaintiffs are referred to as the "Supplier Credit Lenders." Contemporaneously, ESML borrowed money from another syndicate of banks, led by ICICI Bank. Def.'s Response ¶ 5. This syndicate is referred to as the "Project Finance Lenders."

By the summer of 2014, ESML needed additional funding to move forward with the mine. Def.'s Response ¶ 7. Pursuant to its security obligations to the Supplier Credit Lenders and the Project Finance Lenders, ESML had to have the consent of the two lending syndicates before offering any more of its collateral to raise debt. Def.'s Response ¶ 6. The two syndicates ultimately agreed to let ESML grant a security interest to a third syndicate of lenders, the "Term Loan Lenders," for which U.S. Bank serves as the loan agent. Def.'s Response ¶ 7. Thus, on September 30, 2014, the Collateral Agency and Intercreditor Agreement (the "Intercreditor Agreement") was signed by ESML, its then-parent ESML Holdings, Inc., ICICI as facility agent for the Project Finance Lenders, CBI as facility agent for the Supplier Credit Lenders, U.S. Bank as the term loan agent for the Term Loan Lenders, and Wells Fargo Bank Northwest N.A., as the security agent. Def.'s Response ¶ 9.

The Intercreditor Agreement describes ESML's obligations to each of the three syndicates of secured lenders. Def.'s Response ¶ 10. It provides that, in the event of ESML's insolvency, the three syndicates shall recover from ESML's collateral on a *pari passu* basis. Def.'s Response ¶ 10. The Intercreditor Agreement also contains provisions concerning the secured parties' obligations to each other. Section 2.2 of the Intercreditor Agreement states the following:

---

[2] One crore denotes 10,000,000, so 900 crore is nine billion. As of March 13, 2019, 900 crore Indian Rupees converts to approximately $129,304,062 in U.S. dollars. *See* XE Currency Converter, https://www.xe.com/.

> Each Secured Party agrees that (i) it will not challenge or question in any proceeding the validity or enforceability of any Secured Obligations of any Series or any Security Document or the validity, attachment, perfection or priority of any Lien under any Security Document or the validity or enforceability of the priorities, rights or duties established by or other provisions of this Agreement, . . . (iv) it will not institute any suit or assert in any suit, bankruptcy, insolvency or other proceeding any claim against the Security Agent any Secured Debt Representative or any other Secured Party seeking damages from or other relief by way of specific performance, instructions or otherwise with respect to any Collateral . . . .

Section 6.1(a) of the Intercreditor Agreement then states:

> In the event an Insolvency Proceeding has been commenced, nothing contained herein shall limit or restrict the independent right of any Secured Debt Representative or Secured Party to (i) file a claim or statement of interest with respect to its Secured Obligations, (ii) initiate an action or actions in any Insolvency Proceeding and to appear and be heard on any matter before the bankruptcy or other applicable court in any such proceeding, (iii) object in any Insolvency Proceeding or otherwise to any action taken by any other Secured Debt Representative or Secured Party, . . . .

Section 9.3 specifies that the "terms of this Agreement shall survive, and shall continue in full force and effect, in any Bankruptcy Event."

On July 8, 2016, ESML filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware.[3] Def.'s Response ¶ 12. On September 29, 2016, the Supplier Credit Lenders filed proofs of claim with the Bankruptcy Court, asserting secured claims totaling $150,416,096. Def.'s Response ¶ 13. The three syndicates and ESML negotiated over the course of the next few months, and on June 8, 2017, ESML filed its Third Amended Chapter 11 Plan of Reorganization. Def.'s Response ¶ 14. Under the Plan, the secured lenders were to receive *pro rata* shares of approximately $23 million in cash collateral, $3 million in cash in reimbursement for their respective legal fees, and $300 million in notes to be issued by the reorganized ESML. Def.'s Response ¶ 15. The Plan provided that, unless an objection was pending on the Plan's effective date, each secured lender's

---

[3] *In re Essar Steel Minnesota LLC and ESML Holdings, Inc.*, No, 16-11626 (BLS) (Bktcy. D. Delaware).

3

claims under the Plan would be allowed for distribution purposes.  Def.'s Response ¶ 16.

On December 22, 2017, shortly before ESML filed its notice of the effective date, U.S. Bank filed an objection to Plaintiffs' claim.  Def.'s Response ¶ 17.  As a result, Plaintiffs have not received their share under the Plan, though the Term Loan Lenders and Project Finance Lenders have.  Def.'s Response ¶ 18.  Additionally, Plaintiffs have had to defend their claim under the Plan against U.S. Bank's objection.  Def.'s Response ¶ 19.

On January 22, 2018, Plaintiffs sued U.S. Bank alleging that in objecting to Plaintiff's claim in the bankruptcy court action, U.S. Bank breached the Intercreditor Agreement.  Doc. 1.  On April 30, 2018, Plaintiffs moved for partial summary judgment that U.S. Bank breached the agreement.  Doc. 19.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser*

*Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing, e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

In deciding a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmovant and resolves all ambiguities and draws all reasonable inferences against the movant. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). The nonmovant, however, may not rely on unsupported assertions or conjecture in opposing summary judgment. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmovant "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 256–57 (1986)).

Summary judgment is appropriate in a breach of contract action where "the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning." *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 98 (2d Cir. 1996) (quoting *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985); *see also Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) ("The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment."). "Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate." *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990). But "[t]he mere assertion of an ambiguity does not suffice to make an issue of fact." *Id.*

## III.  DISCUSSION

The Intercreditor Agreement does not unambiguously bar the secured lenders from objecting to each other's claims in an insolvency proceeding. Plaintiffs thus have failed to show

5

that no genuine dispute of material fact exists as to whether U.S. Bank breached the Agreement. Summary judgment is therefore denied.

Plaintiffs argue that section 2.2 of the Intercreditor Agreement clearly bars secured lenders from objecting to their claim. That section prohibits each secured party from "challeng[ing] or question[ing] in any proceeding the validity or enforceability of any Secured Obligations of any Series or any Security Document . . . ." Section 9.3 affirms that the terms of the Agreement continue in full force and effect in the event of ESML's bankruptcy. Thus section 2.2, on its face, bars the challenged conduct of U.S. Bank in the bankruptcy action.

The Court agrees with U.S. Bank, however, that section 6.1(a) creates an exception to section 2.2 that authorizes U.S. Bank's objection in the bankruptcy action. Section 6.1(a) states that

> [i]n the event an Insolvency Proceeding has been commenced, nothing contained herein shall limit or restrict the independent right of any Secured Debt Representative . . . to . . . (ii) initiate an action . . . in any Insolvency Proceeding, . . . [or] (iii) object in any Insolvency Proceeding . . . to any action taken by any other Secured Debt Representative or Secured Party . . . .

U.S. Bank's objection plainly fits within the conduct allowed under section 6.1(a)(ii). The objection is an "action" in an Insolvency Proceeding, defined by the Intercreditor Agreement to include any "*bankruptcy*, *reorganization*, compromise, arrangement, insolvency, readjustment of debt, dissolution or liquidation or similar proceeding initiated by a Grantor," Intercreditor Agreement at 8 (emphasis added), in which U.S. Bank was heard on a specific matter before the bankruptcy court—Plaintiffs' entitlement to the collateral of ESML. U.S. Bank's objection also fits within section 6.1(a)(iii), as it was made in response to Plaintiffs' action of asserting claims in ESML's collateral.

Indeed, Plaintiffs do not dispute that the text of section 6.1(a)(ii) and (iii) describes as

6

permissible U.S. Bank's objection. Plaintiffs instead contend that section 2.2 overrides section 6.1(a) because the latter specifies that the permitted actions must "in each case [be] in accordance with the terms of this Agreement . . . ." The opposite is true. Section 6.1(a) qualifies that "nothing contained herein shall limit or restrict the independent right of any Secured Debt Representative or Secured Party to" do the actions described in (a)(ii) and (iii). Section 2.2 lacks a similar qualifier. The addendum that permitted actions must "in each case [be] in accordance" with the Agreement's terms has the effect of confusing the qualifying clause's effect, but it only applies to section 6.1(a)(iv) and (vi), not (ii) and (iii), in which the addendum does not appear.[4] Section 6.1(a)'s qualifier clearly expresses the parties' intent to preserve their right to undertake the enumerated actions despite what else the Intercreditor Agreement may say. The Court thus construes the prohibition in section 2.2 to exclude the enumerated actions, including that complained of here, objecting to another secured party's claim in a bankruptcy proceeding.

Even in the absence of the qualifying clause, Plaintiffs would still fail to show that the Intercreditor Agreement unambiguously prohibits U.S. Bank's objection, because section 6.1(a) is arguably more specific than section 2.2. "[S]pecific language in a contract will prevail over general language where there is an inconsistency between two provisions . . . ." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 111 (2d Cir. 2008). Section 6.1(a) specifically concerns the rights of the signatories in the event ESML entered insolvency proceedings, while section 2.2 concerns the obligations of the signatories in "any" proceeding. Plaintiffs argue that section 2.2 also concerns events that occur after bankruptcy; indeed, section 9.3 confirms that the

---

[4] Plaintiffs insist that the addendum nonetheless applies to section 6.1(a)(ii) and (iii) because the intention of the parties to the contract should matter more than grammar and punctuation, citing to *United States v. Naftalin*, 441 U.S. 768 (1979). But by only including the addendum for certain parts of section 6.1(a) and not for others, the parties made clear that they did not intend for the addendum to apply to those parts that lacked the addendum.

terms of the Intercreditor Agreement continue to apply in bankruptcy and the entire Agreement evidences a consciousness of bankruptcy's possibility. This misses the point. While section 2.2 does apply to proceedings that occur in bankruptcy, it *also* applies to "any" other proceeding. Section 6.1(a) is *only* triggered "[i]n the event an Insolvency Proceeding has been commenced . . . ." Thus, it is more specific than section 2.2, at least in this respect.

Plaintiffs present other arguments in support of their interpretation of the Intercreditor Agreement. First, Plaintiffs cite various provisions of the Agreement, like section 6.1(c), that acknowledge their *pari passu* rights in ESML's collateral. But these provisions are of no help; the promise of a certain distribution method of ESML's collateral has no bearing on whether Plaintiffs have a right to that collateral in the first instance nor whether U.S. Bank may challenge Plaintiffs' purported right.

Second, Plaintiffs argue that another part of section 2.2, part (iv) of section 2.2, prohibits U.S. Bank from objecting to Plaintiffs' claim. But section 2.2(iv) bars secured parties from "assert[ing] in any suit, bankruptcy, insolvency or other proceeding any claim against . . . any other Secured Party *seeking damages from* or other *relief by way of specific performance, instructions or otherwise* with respect to any Collateral," Intercreditor Agreement at 16 (emphasis added), and U.S. Bank's objection does not seek such relief.

Lastly, Plaintiffs argue that the context at the time the Intercreditor Agreement was signed, namely the poor financial health of ESML and U.S. Bank's status as a new creditor, shows that unless the Intercreditor Agreement prohibits the secured parties from challenging each other's claims in bankruptcy, it is pointless. But the Intercreditor Agreement contains many provisions other than section 2.2. As Plaintiffs repeatedly point out, for example, it provides that the secured parties all have *pari passu* rights to ESML's collateral. More to the point, summary

judgment should be denied where the Court must resort to such extrinsic evidence of intent to determine the meaning of a contract. *See Thompson*, 896 F.2d at 721.

Because the Court finds that the language of the Intercreditor Agreement provides sufficient basis to deny Plaintiffs' summary judgment motion, it will not address U.S. Bank's mootness arguments.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is DENIED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 19. The parties are directed to appear for a status conference at 11:45AM, April 5, 2019, at Courtroom 619, Thurgood Marshall Courthouse, 40 Foley Square, New York, NY.

SO ORDERED.

Dated: March 14, 2019
New York, New York

_____
Edgardo Ramos, U.S.D.J.